UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JOANN MARIE BROUSSARD | CIVIL ACTION NO. 6:11-cv-01329 |
| VERSUS | JUDGE DOHERTY |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE HANNA |

# **REPORT AND RECOMMENDATION**

Before this Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED.

## **BACKGROUND**

The claimant, Joann Marie Broussard, was born on April 6, 1958.[1] On January 15, 2009, at the age of 51, she applied for disability insurance benefits and also for Supplemental Security Income, alleging a disability onset date of December 27, 2008.[2] Although her application indicated that she was claiming to be disabled

---

[1] Rec. Doc. 7-1 at 126.

[2] Rec. Doc. 7-1 at 126-130, 131.

because of heart-related issues, she indicated at the hearing that her "residual impairments are mostly osteoarthritic in nature" including complaints of knee, shoulder, chest, and back pain.[3] She has a high school education[4] and work experience as a caregiver and security guard in a halfway house,[5] janitor,[6] commercial seamstress,[7] cashier,[8] and substitute teacher.[9] She did not stop working because of her alleged disability. Instead, she stopped working because she was laid off when the halfway house changed ownership.[10] She never reentered the work force.

A determination was made that Ms. Broussard is not disabled.[11] She then requested a hearing, which was held on February 12, 2010 before Administrative Law Judge ("ALJ") Steven C. Graalman.[12] An unfavorable ruling was issued on April 29,

---

[3] Rec. Doc. 7-1 at 39, 45.

[4] Rec. Doc. 7-1 at 41.

[5] Rec. Doc. 7-1 at 42, 51.

[6] Rec. Doc. 7-1 at 42.

[7] Rec. Doc. 7-1 at 43.

[8] Rec. Doc. 7-1 at 44.

[9] Rec. Doc. 7-1 at 43.

[10] Rec. Doc. 7-1 at 44.

[11] Rec. Doc. 7-1 at 61, 62.

[12] Rec. Doc. 7-1 at 36-60.

2010.[13] Ms. Broussard requested review by the Appeals Council. The Appeals Council reviewed the ALJ's decision, and on June 16, 2011, the Appeals Council issued its ruling, taking into consideration the claimant's obesity but affirming the ALJ's decision that Ms. Broussard is not disabled.[14] The Appeals Council's decision is the Commissioner's final decision for purposes of judicial review. This appeal followed in July 2011.[15]

## Assignment of Errors

Ms. Broussard argues that the Commissioner failed to properly consider and weigh the medical opinion of Dr. Shahed Jameel; failed to properly consider and weigh relevant medical evidence regarding her orthopedic and rheumatologic impairments; failed to comply with SSR 96-8p when assessing her residual functional capacity; failed to comply with SSR 96-7p when assessing her credibility; and erred in finding that she has the residual functional capacity to perform the full range of light work.

---

13 Rec. Doc. 7-1 at 27-32.

14 Rec. Doc. 7-1 at 7-9.

15 Rec. Doc. 1.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[16] If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[17] Substantial evidence is more than a mere scintilla and less than a preponderance.[18] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[19] Finding substantial evidence requires scrutiny of the entire record as a whole.[20] In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[21]

---

16 *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

17 *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

18 *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

19 *Boyd v. Apfel,* 239 F.3d at 704.

20 *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

21 *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

## DISCUSSION

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[22] Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[23] Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[24]

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled. At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors. If an individual is capable of performing

---

22 *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

23 42 U.S.C. § 423(d)(1)(A).

24 20 C.F.R. § 404.1572(a)-(b).

the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[25]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[26] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[27] The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[28]

The claimant bears the burden of proof on the first four steps.[29] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can

---

25 *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f). See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

26 20 C.F.R. § 404.1520(a)(4).

27 20 C.F.R. § 404.1545(a)(1).

28 20 C.F.R. § 404.1520(e).

29 *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

perform other substantial work in the national economy.[30] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[31] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[32] If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[33]

In this case, the Commissioner found, at step one, that Ms. Broussard has not engaged in substantial gainful activity since her alleged disability onset date of December 27, 2008.[34] That finding is supported by evidence in the record.

At step two, the ALJ found that Ms. Broussard has the following severe impairments: coronary artery disease and pain in the right shoulder and left knee.[35] This is also supported by evidence in the record.

---

30 *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

31 *Fraga v. Bowen*, 810 F.2d at 1304.

32 *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

33 *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

34 Rec. Doc. 7-1 at 29.

35 Rec. Doc. 7-1 at 29.

At step three, the ALJ found that Ms. Broussard does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[36] Ms. Broussard does not contend that this finding was erroneous.

The ALJ then found that Ms. Broussard retains the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b).[37] The ALJ then proceeded to step four, where he found that Ms. Broussard is capable of performing her past work as a security guard and cashier.[38] Accordingly, the ALJ did not proceed to step five. The ALJ found that Ms. Broussard has not been disabled from December 27, 2008 through the date of the decision.[39]

Ms. Broussard argues that there are several reasons why the ALJ's decision is erroneous, each of which will be considered in turn.

---

[36] Rec. Doc. 7-1 at 29.

[37] Rec. Doc. 7-1 at 30.

[38] Rec. Doc. 7-1 at 31.

[39] Rec. Doc. 7-1 at 32.

### 1. THE COMMISSIONER PROPERLY CONSIDERED AND WEIGHED DR. JAMEEL'S OPINIONS

Ms. Broussard argues that the Commissioner failed to properly consider and weigh the medical opinion of Dr. Shahed Jameel. At the request of the claimant, Dr. Jameel issued a medical source statement of ability to do work-related physical activities on October 1, 2009.[40] Dr. Jameel opined that Ms. Broussard can occasionally lift and carry up to 10 pounds, can only sit or walk for thirty minutes at a time, can sit a maximum of four hours per eight-hour workday, and can stand or walk a maximum of four hours per eight-hour workday. He opined that she can never reach overhead with her right hand, can occasionally reach and handle with her right hand, and can never push or pull with her right hand. He opined that she has no limitations with regard to her left hand. He opined that Ms. Broussard must take a fifteen minute break from work activities every thirty minutes because of fatigue and because her medication makes her drowsy. He also opined that she will need to miss work or leave work early at least once a week.

40 Rec. Doc. 7-1 at 288-291.

The ALJ found Dr. Jameel's assessment of Ms. Broussard's functional capacity "to be inconsistent with the objective medical evidence and, therefore, [it] is given little weight."[41]

Ms. Broussard contends that Dr. Jameel's opinions should have been given more weight. Ms. Broussard does not assert that Dr. Jameel is her treating physician, but she does contend that he examined her and reviewed medical records from UMC as the basis for his opinions.[42] The record does not contain a detailed record of Dr. Jameel's examination of Ms. Broussard; it contains only a three-page form permitting Dr. Jameel to check off his opinions regarding Ms. Broussard's functionality. Still, Ms. Broussard argues that the ALJ was presented with opinions by two examining doctors – Dr. Denison and Dr. Jameel – and should have given Dr. Jameel's opinion substantial weight. She further contends that the Commissioner's reliance on the opinions of the consulting internist, Dr. Daniel Denison, set forth in his report of March 21, 2009,[43] and those of the state agency medical consultant, Dr. Mark M. Walker, set forth in his report of April 16, 2009,[44] was misplaced because they did not

---

41 Rec. Doc. 7-1 at 31.

42 Rec. Doc. 11 at 2.

43 Rec. Doc. 7-1 at 272-275.

44 Rec. Doc. 7-1 at 278-285.

base their opinions on medical records from March 22, 2009 through June 16, 2011, including medical records diagnosing Ms. Broussard with conditions that had not yet been diagnosed when Dr. Denison and Dr. Walker provided their opinions. In particular, Ms. Broussard argues that "Dr. Denison's opinions cannot constitute substantial evidence regarding the functional limitations resulting from Ms. Broussard's diagnoses of osteoarthritis, degenerative joint disease, costochondritis, polyarthralgia, and Sjogren's syndrome because those conditions had not been diagnosed at the time of Dr. Denison's examination."[45]

This logic is faulty because Dr. Jameel's report, which is dated October 1, 2009, was also issued before Ms. Broussard was diagnosed with degenerative joint disease, polyarthralgia, or Sjogren's syndrome. At the time that Dr. Jameel evaluated Ms. Broussard's functional capacity, she had been diagnosed with costochondritis but, just a couple of days earlier, she was also found to have essentially normal joints. Although she reported left knee and right shoulder pain on September 28, 2009, she had a full range of motion in both of those joints and x-rays taken that day showed no bony or soft tissue abnormalities.[46] Thus, the medical evidence available to Dr.

---

[45] Rec. Doc. 11 at 2.

[46] Rec. Doc. 7-1 at 356, 357.

Jameel was not very different from the medical evidence available to Dr. Denison approximately seven months earlier.

After Dr. Denison examined Ms. Broussard, he prepared a detailed report[47] including numerous relevant factual findings. He found that she walked without difficulty with a normal gait, had no trouble getting on and off the examination table or in and out of a chair. She was able to dress and undress without problems. She had a normal range of motion in her shoulders and knees and there was no evidence of muscle atrophy. In summary, he found no clinical evidence to support any functional limitations. In later medical records, no physician other than Dr. Jameel placed limitations on Ms. Broussard's activities, and Dr. Jameel did not tie his opinions to any particular clinical findings other than a reference to her report of pain in her right shoulder.

An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.[48] When a treating or examining physician's opinions are inconsistent with other substantial evidence in the record, the opinions are not

---

[47] Rec. Doc. 7-1 at 272-275.

[48] *Qualls v. Astrue*, 339 Fed. App'x 461, 466 (5th Cir. 2009), citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

entitled to any specific weight in the ALJ's decision.[49] It is clear that the ALJ did consider both Dr. Denison's opinions and Dr. Jameel's opinions as well as all of the medical evidence in the record at the time of the hearing when reaching his conclusion that Ms. Broussard retained the residual functional capacity to perform light work.

Accordingly, the undersigned finds that the ALJ did not err in assigning weight to the physician's statements and that the Commissioner's residual functional capacity finding was based on substantial evidence.

## 2. THE COMMISSIONER PROPERLY CONSIDERED AND WEIGHED THE MEDICAL EVIDENCE REGARDING MS. BROUSSARD'S ORTHOPEDIC AND RHEUMATOLOGIC IMPAIRMENTS

Ms. Broussard argues that the Commissioner failed to properly consider and weigh relevant medical evidence regarding her orthopedic and rheumatologic impairments. Originally, Ms. Broussard claimed that she was disabled because of a heart attack. Later, she argued that her disabling conditions are joint pain caused by osteoarthritis and/or certain rheumatologic conditions.

[49] *DeLeon v. Barnhart*, 174 Fed. App'x 201, 202 (5th Cir. 2006), citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

In March 2009,[50] approximately three months after suffering a heart attack, Ms. Broussard presented at the University Medical Center ("UMC") emergency room complaining of chest pain, joint pain, and left knee pain. Although her left knee was tender to palpation, there was no compromise of the knee's range of motion. Osteoarthritis was diagnosed, and a painkiller was prescribed.

On May 22, 2009,[51] Ms. Broussard again went to the ER at UMC complaining of chest pain. She was tender to palpation and diagnosed with costochondritis, an inflammation of the cartilage of the breast bone. An anti-inflammatory medication was administered.

On September 28, 2009,[52] Ms. Broussard again presented at UMC's ER. This time, she complained of right shoulder pain and left knee pain. Although both were tender to palpation, she had a full range of motion in both. An x-ray of her knee showed no bony abnormalities, no soft tissue abnormalities, and no joint effusion.[53] An x-ray of her shoulder showed no bony abnormalities, no fractures or dislocations, and a well-maintained acromioclavicular joint.[54]

---

50 Rec. Doc. 7-1 at 306-308.

51 Rec. Doc. 7-1 at 298-302.

52 Rec. Doc. 7-1 at 350, 353-353, 356-357.

53 Rec. Doc. 7-1 at 356.

54 Rec. Doc. 7-1 at 357.

Ms. Broussard was evaluated at UMC's orthopedic clinic on November 11, 2009.[55] She reported joint pain in both knees, with the left worse than the right, as well as pain, numbness, and tingling extending to her feet. She was diagnosed with osteoarthritis, and a steroid injection was administered.

Ms. Broussard was seen in UMC's internal medicine clinic for her costochondritis on January 4, 2010.[56]

A few days later, on January 13, 2010, she went to UMC's orthopedic clinic for a follow-up visit. She reported improvement in her shoulder but continued knee pain that radiated to her feet. She was given another steroid injection.

The hearing was held on February 12, 2010, and the ALJ's unfavorable decision was rendered on April 29, 2010. Thereafter, Ms. Broussard was evaluated for rheumatologic disorders (June 12, 2010), diagnosed with polyarthralgia (August 15, 2010), and diagnosed with Sjogrens Syndrome (August 30, 2010), an autoimmune disease.

Ms. Broussard argues that the ALJ failed to properly consider and weigh the evidence in the record concerning her orthopedic and rheumatologic conditions. But that evidence does not shed light on Ms. Broussard's medical condition on her

---

55 Rec. Doc. 7-1 at 349.

56 Rec. Doc. 7-1 at 341-343.

alleged disability onset date, on the date of the hearing, or on any date between the two. This evidence might have been material had the date of the hearing been later. But the Fifth Circuit has instructed that evidence is not material "insofar as it details the alleged worsening of a claimant's condition after the date of the hearing. This is not to say that we cannot consider any evidence post-dating a hearing, but that medical evidence must shed light on the severity of a claimant's medical condition before the hearing."[57] In fact, a claim may be remanded "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."[58] It is implicit in the materiality requirement, however, that the new evidence not be evidence of a later-acquired disability or of the subsequent deterioration of a previously non-disabling condition.[59]

At the time that Dr. Denison examined Ms. Broussard and submitted his report, and at the time that Dr. Walker evaluated Ms. Broussard's residual functional capacity, Ms. Broussard was alleging that she was disabled because of her heart condition. She later withdrew that contention and now argues that she is disabled

---

57 *Hammond v. Barnhart*, 132 Fed. App'x 6, 7 (5th Cir. 2005).

58 42 U.S.C. § 405(g) [(emphasis added].

59 *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989); *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).

because of orthopedic and rheumatologic conditions most of which developed and were diagnosed after the hearing. Thus, the evidence that Ms. Broussard would like the Commissioner to focus on likely reflects a later-acquired disability or the subsequent deterioration of the previously non-disabling condition. The undersigned accordingly finds that the Commissioner did not err in weighing this evidence.

### 3. THE COMMISSIONER PROPERLY EVALUATED MS. BROUSSARD'S RESIDUAL FUNCTIONAL CAPACITY

Ms. Broussard's next three arguments are related. She contends that the Commissioner failed to comply with SSR 96-8p when assessing her residual functional capacity, failed to comply with SSR 96-7p when assessing her credibility considering her functionality, and erred in finding that she has the residual functional capacity to perform the full range of light work. The undersigned finds that the Commissioner's finding that Ms. Broussard has the residual functional capacity to perform the full range of light work was reached by use of the proper legal analysis and is supported by substantial evidence.

Ms. Broussard's primary complaint is pain. Pain can limit the range of jobs a claimant can perform, but there should be clinical or laboratory diagnostic studies showing the existence of a medical impairment which could reasonably be expected

to produce the amount of pain alleged.[60] In this case, Ms. Broussard does have a severe condition that can cause pain. But pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[61] Mild or moderate pain is not disabling, and Ms. Broussard does not contend that the ALJ erred in failing to find that her pain in and of itself is disabling.

Instead, she argues that the ALJ failed to comply with SSR 96-8p in evaluating her residual functional capacity and failed to comply with SSR 96-7p when evaluating her credibility concerning her alleged functional limitations. Overall, Ms. Broussard contends that the Commissioner erred in finding that she retains the capacity to perform light work.

SSR 96-8p states that a residual functional capacity "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Although the Social Security Administration's rulings are not binding on this court, the Fifth Circuit has frequently relied upon those rulings in evaluating an ALJ's decision.[62] In fact, the Fifth Circuit has held that, when making a residual functional capacity determination, an ALJ must

---

60 *Selders v. Sullivan*, 914 F.2d at 618.

61 *Selders v. Sullivan*, 914 F.2d at 618-19.

62 *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

perform a function-by-function assessment of a claimant's capacity to perform sustained work-related physical and mental activities.[63] Here, Ms. Broussard claims that the ALJ's review of her functioning was insufficient because it did not include a narrative discussion with citations to the evidence demonstrating that she is capable of standing and walking six hours out of an eight-hour work day, as is necessary for light work, and failed to address the effect that arthritis in her shoulder and costochondritis will have on her lifting ability.

A review of the ALJ's decision reveals, however, that he reviewed in detail the functional analysis performed by Dr. Shahed Jameel at the claimant's request and the state agency consultant's functional analysis as well as Ms. Broussard's function report and hearing testimony. The undersigned finds that this was sufficient. When an ALJ's residual functional capacity assessment is based at least in part on the function-by-function analysis of claimant's exertional limitations contained in a state examiner's medical report, the legal standard set forth in the jurisprudence and in SSR 96-8p is satisfied.[64]

Ms. Broussard next argues that the Commissioner failed to properly evaluate her credibility. "Once a medical impairment is established, the subjective complaints

---

63 *Myers v. Apfel*, 238 F.3d at 620-22.

64 See *Onishea v. Barnhart*, 116 Fed. App'x. 1, 2 (5th Cir. 2004).

of pain must be considered along with the medical evidence in determining the individual's work capacity."[65] In this case, the ALJ found that Ms. Broussard's medically determinable impairments could reasonably be expected to produce her alleged symptoms. Consequently, the ALJ was required to evaluate the intensity, persistence, and limiting effects of her symptoms. "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."[66] The regulations state: "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."[67] Ms. Broussard argues that the ALJ failed to provide specific reasons why her subjective complaints were not found credible.

The Fifth Circuit has held that although an ALJ "is bound . . . to explain his reasons for rejecting a claimant's complaints of pain," he is not required to "follow

---

65 *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).

66 SSR 96-7p, *1.

67 SSR 96-7p, *4.

formalistic rules in his articulation."[68] In this case, the ALJ reviewed Ms. Broussard's testimony concerning her functional limitations, noting that she is able to take care of her grandchildren and pet, cook and do household chores on a daily basis, shop, and attend church weekly, and concluding that "the claimant's allegations of disabling symptoms and limitations cannot be accepted."[69] The undersigned finds that the ALJ's narrative was sufficient.

Furthermore, a careful review of the record reveals no physician-imposed restrictions on Ms. Broussard's activities other than those of Dr. Jameel, which as explained above were properly discounted by the ALJ. The lack of physician-imposed restrictions inconsistent with light work rebuts Ms. Broussard's alleged inability to work.[70] An ALJ may discount a claimant's subjective complaints when the alleged impairments contradict the medical evidence.[71]

The record indicates that Ms. Broussard worked as a caregiver and security guard at a halfway house in 2007 and 2008. The record contains no evidence that Ms. Broussard was unable to perform all of her work duties during the time period that

---

68 *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

69 Rec. Doc. 7-1 at 31.

70 *Hollis v. Bowen*, 837 F.2d 1378, 1387 (5th Cir. 1988).

71 *Hernandez v. Astrue*, 278 Fed. App'x 333, 340 (5th Cir. 2008).

she performed that work. She stopped working before she had a heart attack on December 28, 2008 for reasons unrelated to her health. She originally claimed that she became disabled on that day because of her heart condition, but she now contends that it is not her heart condition that makes her disabled. She contends, instead, that osteoarthritis in her chest, knee, and shoulder – which is unrelated to her heart condition – is disabling. The record contains no evidence that Ms. Broussard had arthritis or arthritis-related pain in her chest, knee, or shoulder at any time prior to the alleged disability onset date.

In this case, the ALJ was presented with medical evidence that Ms. Broussard has a painful knee and a painful shoulder but the nature and extent of the functional impairment resulting from those conditions, as revealed by the medical testing and as explained by the physicians, was inconsistent with Ms. Broussard's own subjective evaluation of her functional capacity. Accordingly, the ALJ's finding regarding Ms. Broussard's credibility is supported by the evidence in the record.

While the ALJ did not strictly follow the letter of SSR 96-7p in explaining the credibility finding, strict adherence is not mandatory. Procedural perfection in administrative proceedings is not required, and a judgment will not be vacated unless a party's substantial rights have been affected.[72] Furthermore, procedural

[72] *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).

improprieties constitute a basis for remand only when the improprieties cast into doubt the existence of substantial evidence to support the ALJ's decision.[73]

In this case, the ALJ's decision that Ms. Broussard is capable of performing light work is supported by substantial evidence, and the ALJ's failure to evaluate the credibility of her statements regarding her functional capacity in strict adherence to the letter of the cited regulation was not reversible error.

For these reasons, the undersigned finds that the Commissioner did not err in evaluating Ms. Broussard's residual functional capacity.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Mrs. Melancon is not disabled is supported by substantial evidence. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of

---

[73] *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 6th day of July 2012.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE